Merlin W. BITTERS, Plaintiff-Appellant,

v.

MILCUT, INC. and Carl W. Strohmaier,
Defendants-Respondents.

Court of Appeals

*No. 83–378. Submitted on briefs November 16, 1983.—
Decided December 19, 1983.*
(Also reported in 343 N.W.2d 418.)

For the plaintiff-appellant the cause was submitted on
the briefs of *Minahan & Peterson, S.C.,* with *Thomas E.
Reinhart* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted
on the briefs of *Quarles & Brady,* with *Wayne E. Babler,
Jr.* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J. Merlin Bitters (Bitters) appeals from
a judgment which held that Milcut, Inc. (Milcut) was
not obliged under sec. 180.43, Stats., to produce interim
corporate financial statements for Bitters' inspection
upon his demand. We agree with the trial court that
such interim statements are not within the "books and

records of account" language of sec. 180.43(2), and accordingly affirm.

Bitters had been a member of Milcut's board of directors from 1966 to 1979. He resigned his employment with Milcut in 1980, since which time he has been a self-employed manufacturer's representative for several firms, including some competitors of Milcut.

Before June of 1980, Bitters and Carl Strohmaier (Strohmaier), the president of Milcut, were the only shareholders. From March through the end of 1980, Bitters transferred some of his Milcut stock to third parties.

On November 5, 1981, Bitters, by letter, demanded a copy of all interim profit and loss statements and balance sheets (interim financial statements) for the stated purpose of determining the current value of his holdings. While Milcut provided Bitters with a standard annual financial statement as well as a specially prepared shareholder interim financial statement for the first quarter of 1980 and the opportunity to inspect various board transaction record, it refused to provide him with the opportunity to examine the detailed quarterly interim profit and loss statements which he sought. Bitters brought suit for their production. The trial court concluded that Milcut was not obliged under sec. 180.43(2), Stats., to produce these interim financial statements. Bitters appeals.

The crux of this appeal is the interpretation of sec. 180.43(2), Stats. The construction of a statute is a question of law, *Robinson v. Kunach,* 76 Wis. 2d 436, 446, 251 N.W.2d 449, 453 (1977), as is the application of a statute to a particular set of facts. *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979).

In construing a statute, the first recourse is to the language of the statute itself. *State v. Derenne,* 102 Wis.

2d 38, 45, 306 N.W.2d 12, 15 (1981). Our examination of sec. 180.43(2), Stats., persuades us that the "books and records of account" language is unambiguous and does not include interim profit and loss statements within its purview.

Where a statute is clear on its face, this court will not look outside the langauge of the statute in applying it. *Wisconsin Electric Power Co. v. Public Service Commission,* 110 Wis. 2d 530, 534, 329 N.W.2d 178, 181 (1983). Looking at the "books and records" language in context of the remainder of the statute,[1] we are led to

---

[1] Subsections (1), (2) and (3) of sec. 180.43, Stats., read as follows:

(1) Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors; shall keep at its registered office or principal place of business, or at the offices of its transfer agents or registrars, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each; and shall cause a true statement of its assets and liabilities as of the close of each fiscal year and of the results of its operations and of changes in surplus for such fiscal year, all in reasonable detail, to be made and filed at its registered office within 4 months after the end of such fiscal year or such longer period as may be reasonably necessary for the preparation thereof, and thereat kept available for a period of at least 10 years for inspection on request by any shareholder, and shall mail a copy of the latest such statement to any shareholder or holder of voting trust certificates for shares of the corporation upon his written request therefor. Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

(2) Any person who shall have been a shareholder of record for at least 6 months immediately preceding his demand or who shall be the holder of record of at least 5% of all the outstanding shares of a corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper

conclude that an interim profit and loss financial statement does not fall within the "books and records" purview.

Subsection (1) requires each corporation to keep books and records of account, minutes of proceedings, and a record of shareholders. It further requires each corporation to make, file and keep available for shareholders' inspection "a true statement of its assets and liabilities as of the close of each fiscal year and of the results of its operations and of changes in surplus for each fiscal year, all in reasonable detail . . . ." This requirement is undoubtedly one for an annual financial statement, because subsection (3), which gives voting trust certificate holders "the same rights of examination as are accorded to shareholders,"[2] adds "annual financial statements" to the above catalog of what records a corporation shall keep.

Subsection (1), then, distinguishes between "books and records of account" and annual financial statements. In essence, Bitters argues that interim financial statements are to be included within the "books and records of account" provision of subsec. (2). Because of the distinction drawn by subsecs. (1) and (3) between "books and records of account" and "annual financial statements," we cannot justify broadening the meaning

purpose, its relevant books and records of account, minutes and record of shareholders and to make extracts therefrom.

(3) A holder of a voting trust certificate evidencing an interest in a voting trust conforming to the provisions of this chapter shall have the same rights as a shareholder to examine and make extracts from the relevant books and records of account, annual financial statements, minutes and record of shareholders of such corporation upon submitting to the corporation, officer or agent to whom demand for examination is made, his voting trust certificate or other proof of his interest in the voting trust.

[2] Note to sec. 26, ch. 285, Laws of 1971.

of "books and records" for subsec. (2) purposes when both subsecs. (1) and (3) treat "books and records" and "financial statements" independently. To adopt Bitters' interpretation would be to render "annual financial statements" in subsec. (3) effectively meaningless or superfluous, a circumstance to be avoided whenever possible. *See Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47, 52 (1981).

We reject Bitters' argument that *State ex rel. McClure v. Malleable Iron Range Co.*, 177 Wis. 582, 187 N.W. 646 (1922) mandates a broad interpretation of "books and records of account." While *McClure* can fairly be read to require broad powers of inspection by shareholders, its vitality as case law has been significantly diminished by subsequent statutory amendments.

Section 1757, Stats. (1921) provided in pertinent part: "The books of every corporation containing the stock subscriptions and accounts shall at all reasonable times be open to the inspection of the stockholders . . . ." The modern equivalent, sec. 180.43, Stats., has refined and particularized these requirements. Most notably, the phrase, "books and records of account," is now modified by the word, "relevant," throughout the statute. Sec. 26, ch. 285, Laws of 1971. The comment to that change states: "The right to examine books and records is to be limited to 'relevant' books and records, thus narrowing the scope for fishing expeditions." We read that statutory change and the explicit purpose behind it as having significantly narrowed the scope of the section from the days of *McClure*. We conclude that the broad dictates of *McClure* are no longer applicable.

Bitters cites this court to cases from other jurisdictions which posit broad inspection rights. While some other jurisdictions do construe inspection rights more broadly, *see e.g.*, Annot., 88 A.L.R.3d 653 (1978), we,

because of the limitation on the right created by the addition of the word, "relevant," are unpersuaded by those cases. We do note, however, that it has been stated in reference to a common law inspection right that "preliminary profit and loss statements . . . are not part of the 'books' of the corporation which a stockholder has a right to inspect." [Footnote omitted.] 5 W. Fletcher, Cyclopedia of the Law of Private Corporations § 2239 (1976). Since we view the ultimate statutory amendments as restrictive, not expansive, of the common law right, the above statement is true here *a fortiori*.

Having determined that the pertinent statutory language does not include interim financial statements, we need not address Bitters' further argument concerning the proper purpose of a shareholder in seeking documents from a corporation.

*By the Court.*—Judgment affirmed.