Jose M. RUBI, Plaintiff-Respondent,

v.

Norma Z. PAIGE, Helene Zelazo and Astronautics
Corporation of America, Defendants-
Appellants.†

Court of Appeals

*No. 86–1047. Submitted on briefs January 6, 1987.—Decided
April 23, 1987.*

(Also reported in 407 N.W.2d 323.)

† Petition to review dismissed.

300

For the plaintiff-respondent the cause was submitted on the briefs of *Chris J. Trebatoski* of *Michael, Best & Friedrich,* of Milwaukee.

For the defendants-appellants the cause was submitted on the briefs of *Holly Russek* of Milwaukee, and *Samuel Paige* of New York, NY.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J.    Astronautics Corporation of America (ACA) appeals from a judgment requiring it to produce under sec. 180.43(2), Stats., certain corporate records for shareholder Jose M. Rubi (Rubi) to inspect, and to pay Rubi a $500 penalty under sec. 180.43(4). On appeal, ACA raises three issues: (1) Rubi did not meet the requirements of proper purpose and relevance for an inspection under sec. 180.43(2)(a); (2) crucial findings of fact of the trial court which are drawn from documentary evidence are inconsistent with and are not supported by such evidence; and (3) the trial court erred in imposing a penalty. We conclude that the trial court's judgment regarding the first issue must be modified. The second two issues are affirmed.

In April 1984, ACA sent a notice to its minority shareholders offering to purchase their ACA stock for $9,800 per share. Upon receipt of this letter, Rubi, who owned two shares, wrote ACA requesting information that ACA "would expect to give to a shareholder in a publicly held company," namely information regarding ACA's financial situation and certain management actions, as well as ACA's future plans.[1] Rubi

---

[1]Rubi requested the following information:

    1)   cumulative financial earning statements and balance sheets through the most recent accounting period;

    2)   your best estimate of the figures as they will look at the end of the current fiscal year;

    3)   the names and addresses of each director of the company;

    4)   the names and addresses of each officer of the company;

    5)   the experience of each of the foregoing in the previous five years;

    6)   all salaries, bonuses, pension plans, deferred compensation arrangements and other forms of corporate perquisites,

stated that he requested this information to ascertain the value of his stock "[i]n order to make a judgment on this offer ... ."

At first, ACA denied Rubi's request because "[i]nasmuch as ACA is a privately held company, it is under no obligation to provide the information" requested. Eventually, however, ACA acknowledged that Rubi was entitled to inspect the income statements and balance sheets for the fiscal years 1979 through 1983, those parts of ACA's minute books for the last five years describing dividend policy, and ACA's stock transfer records for the past three years.

Rubi then sued ACA to compel ACA to provide him access to its corporate records and minute books, as required by sec. 180.43(2), Stats. The trial court agreed with Rubi and ordered ACA to produce:

a)  the names and addresses of each officer of the company;

b)  all salaries, bonuses, pension plans, deferred compensation arrangements and other forms of corporate perequisites, [sic] including but not limited to, the furnishing of automobiles

---

including, but not limited to, the furnishing of automobiles and aircraft, describing the make and year of each such vehicle;

7)  description of any material transaction with any officer, director or over 10% shareholder;

8)  the names and addresses of each present holder of common stock in your company;

9)  any internal memorandums describing the expected future earnings of your company;

10)  any internal memorandum, or excerpts from the minute books, describing past or future dividend policy; and

11)  the locations of the company records from which the above information may most conveniently be reviewed.

and aircraft, describing the make and year of each such vehicle;

c)   description of any material transaction with any officers, directors, or more than 10% shareholders;

d)   any internal memorandum, or excerpts from the minute books, describing past or future dividend policy.

In addition, the court concluded that pursuant to sec. 180.43(4), ACA was to pay Rubi a $500 penalty for denying Rubi access to the documents he had requested.

## PROPER PURPOSE

ACA first argues that Rubi's stated purpose, that he needed to inspect the requested corporate documents to evaluate ACA's offer to purchase, is not a proper purpose under sec. 180.43(2)(a), Stats. ACA further argues that Rubi's request was not made in good faith and the documents he seeks are not relevant to determine the value of his shares. We disagree.

At issue is the interpretation of "proper purpose" under sec. 180.43(2)(a), Stats. Section 180.43(2)(a) provides that:

Any person who shall have been a shareholder of record for at least 6 months immediately preceding his demand ... upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, *for any proper purpose,* its relevant books and records of account, minutes and record of shareholders and to make extracts therefrom. [Emphasis added.]

The interpretation of a statute is a question of law as is the application of a statute to a particular set of facts.[2] In construing a statute, the first recourse is to the language of the statute itself.[3] When a statute is clear on its face, this court will not look outside the language of the statute in applying it.[4]

Although the legislature has not precisely delineated what constitutes a proper purpose under sec. 180.43(2), Stats., this has been held to be a reasonable purpose germane to a shareholder's status as a shareholder.[5] Generally, a shareholder who alleges a purpose in general terms, such as a desire to determine the value of shares, to communicate with fellow shareholders, or to determine whether improper transactions have occurred, has been held to allege a "proper purpose."[6] An improper purpose under sec. 180.43(2) exists where the demanding shareholder seeks access to a corporation's shareholder records merely to further his own interest in the corporation not as a shareholder but as a stockbroker.[7] It is not the purpose of sec. 180.43(2) to enable "a stockholder to

---

[2]*Bitters v. Milcut, Inc.,* 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983).

[3]*Id.*

[4]*Id.* at 50, 343 N.W.2d at 419.

[5]*A & K R.R. Materials, Inc. v. Green Bay & W. R.R. Co.,* 437 F. Supp. 636, 645 (E.D. Wis. 1977); 4 Model Business Corporations Act Annotated sec. 16.02(c), at 1721 (3d ed. Supp. 1986).

[6]4 Model Business Corporations Act Annotated at 1721; 5 W. Fletcher, Cyclopedia of the Law of Private Corporations secs. 2221–2223.1, 2224 (O. Smith rev. ed. 1976).

[7]*White v. Jacobsen Mfg. Co.,* 293 F. Supp. 1358, 1360 (E.D. Wis. 1968).

pursue a course of activity which would permit it to secure benefits all out of proportion to that which may be secured by any other stockholder.[8]

In this case, Rubi stated that he requested information from ACA because he was concerned about the absence of stock dividends being paid, despite the fact that ACA was extremely profitable and had a high degree of liquidity. Because he was concerned with the management of the company, Rubi requested a list of stockholders and their addresses to see if they were withdrawing funds in the form of salaries, bonuses, pension plans, deferred compensation or some other form of corporate perquisite.

At trial, Rubi testified that he analyzed ACA's income statement and calculated that in 1984, the earnings per share of stock was $9,891. He also stated that he looked at ACA's balance sheet to calculate the historical book value of the stock and came up with a value of $20,038 per share. Rubi also discovered that the amount of money ACA had in the bank per share of stock was higher than the offer to purchase ACA made.

Based on the above, the trial court concluded that Rubi's reasons for requesting documents, so that he could evaluate ACA's offer to purchase and determine why no stock dividends had been paid over the past few years, were "proper purposes" under sec. 180.43(2), Stats. We agree and affirm. We only modify the trial court's judgment to clarify that the place of production of the ordered documents is at ACA's principal place of corporate business.[9]

---

[8]*Id.* at 1359.

[9]Sec. 180.43(1), Stats.

ACA next argues that Rubi's requests were not made in good faith. We disagree.

When the trial court acts as the finder of fact, the judge acts as the ultimate and final arbiter of the credibility of witnesses. When more than one inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.[10]

The trial court specifically considered the issue of good faith. The court's decision to compel ACA to produce the documents Rubi had requested to inspect was based on the court's finding that Rubi was a credible witness and had acted in good faith. To accept ACA's argument on this issue would require this court to make findings of fact which differ from the trial court's findings, which we cannot do. Therefore, the trial court's finding that Rubi acted in good faith is affirmed.

Lastly, ACA argues that the documents Rubi requested were not relevant for the purpose of evaluating the value of his stock as required by sec. 180.43(2)(a), Stats. We disagree.

In making its decision, the trial court carefully considered both the scope of Rubi's requested access to ACA's books and records and the stated purpose behind the request. We agree with Rubi's statement that each of the areas of inspection allowed by the court is relevant and relates directly to Rubi's purpose for requesting the documents. Rather than allow a "fishing expedition," the court provided a limited

[10]*Klein-Dickert Oshkosh, Inc. v. Frontier Mortgage Corp.*, 93 Wis. 2d 660, 663, 287 N.W.2d 742, 743 (1980).

review of ACA's corporate records. Therefore, we affirm the trial court's decision on this issue.

## FACT FINDINGS

ACA contends that crucial findings of fact made by the trial court are inconsistent with and are not supported by the documentary evidence from which they are drawn. ACA's main objection is with the court's findings that Rubi requested access to corporate records and that ACA refused to provide access to the documents. According to ACA, Rubi requested that the information be *sent* to him, which ACA had no obligation to do under sec. 180.43(1), Stats. We agree with ACA that it was not required to send Rubi the documents requested and, as previously discussed, have modified the court's decision to reflect this change. We therefore affirm the trial court's findings of fact.

## PENALTY

Finally, ACA contends that the trial court abused its discretion in imposing a $500 penalty under sec. 180.43(4), Stats. According to ACA, the imposition of a penalty under the statute is discretionary and not mandatory. We disagree.

Section 180.43(4), Stats., provides that:

> Any ... corporation which, shall refuse to allow any such shareholder, ... so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, *shall* be liable to such shareholder in a penalty of 10 per cent of the value of the shares owned by such shareholder, but not to

> exceed $500, in addition to any other damages or remedy afforded him by law. [Emphasis added.]

The general rule is that when the word "shall" is used in a statute, it is presumed mandatory unless a different construction is necessary to carry out the clear intent of the legislature.[11] In addition, when the words "shall" and "may" are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings.[12] The words "shall" and "may" each appear several times in sec. 180.43. Thus, the requirement that the corporation *shall* be liable to pay the shareholder a penalty not to exceed $500 is mandatory, and the court was correct in ordering ACA to pay the penalty.

*By the Court.*—Judgment modified, and as modified, affirmed.

WEDEMEYER, J. (*concurring in part and dissenting in part*). I concur with the final result of my colleagues but respectfully object to their conclusion that the following were permitted to be disclosed: (a) the names and addresses of each officer of the company and (b) any internal memorandum, or excerpts from the minute books describing past or future dividend policy.

The names and addresses of each officer of the company are not required to be produced under sec. 180.43(2)(a), Stats. When a reviewing court considers documentary evidence, it is not bound by the inferences drawn by the trial court and need not give the

---

[11]*In re E.B.,* 111 Wis. 2d 175, 185, 330 N.W.2d 584, 590 (1983).
[12]*Id.* (citation omitted).

trial court's findings any special deference. *State ex rel. Sieloff v. Golz,* 80 Wis. 2d 225, 241, 258 N.W.2d 700, 705 (1977). More important, however, is the fact that Rubi received a copy of the annual report which ACA filed with the secretary of state of Wisconsin.

As to the excerpts from the minute books, again the documentary record clearly supports that Rubi was offered inspection of the corporate minute books describing dividend policy. The other item, i.e. "any internal memorandum" does not here comport with the concept of relevance nor fit within the statutory requirements of disclosure in this particular action. *Cf.* 5 W. Fletcher Cyclopedia of the Law of Private Corporations secs. 2239, 2239.1 (O. Smith rev. ed. 1976).