ESTATE OF Donald E. CAVANAUGH, by James H. Cavanaugh, Special Administrator and James H. Cavanaugh, Plaintiffs-Respondents,†

v.

Robert ANDRADE and City of Milwaukee, Defendants-Appellants,††

Gary Allen ZERGOSKI, Defendant.

Court of Appeals

*No. 94–0192. Oral argument November 9, 1994.—Decided January 24, 1995.*

(Also reported in 528 N.W.2d 492.)

†Petition to review granted.
††Petition to cross review granted.

For the defendants-appellants the cause was submitted on the briefs of *Grant F. Langley*, city attorney

and *Jan A. Smokowicz,* assistant city attorney of Milwaukee. There was oral argument by *Jan A. Smokowicz.*

For the plaintiffs-respondents the cause was submitted on the briefs of *Christopher J. Stawski* of *McGranaghan & Stawski Ltd.* of Milwaukee. There was oral argument by *Christopher J. Stawski.*

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J.  City of Milwaukee Police Officer Robert Andrade and the City of Milwaukee appeal from a judgment entered after a jury found Andrade 2% causally negligent and the City 23% causally negligent for the damages suffered by Donald E. and James H. Cavanaugh when a fleeing auto that was being pursued by Officer Andrade crashed into the auto Donald Cavanaugh was driving. Andrade and the City raise several issues on appeal: (1) whether Andrade and the City are immune from liability; (2) whether an oral stipulation on the record for $100,000 in damages was binding; (3) what limit of liability applies; and (4) whether Cavanaugh can assert a claim for medical expenses without joining the subrogated party who paid the expenses.

Because Officer Andrade is not afforded immunity where he is negligent with respect to the operation of a motor vehicle, because the liability limit under § 345.05, STATS., applies, and because James Cavanaugh can recover for medical expenses, we affirm the judgment on these issues. Because the City is immune from liability, however, and because the oral stipulation on damages was binding, we reverse that portion of the judgment.

## I. BACKGROUND

On January 13, 1989, shortly before 11:30 p.m., Police Officer Andrade was traveling on South 35th Street, approaching a green light at the intersection of Forest Home Avenue. Just prior to reaching the intersection, Andrade observed a westbound vehicle on Forest Home Avenue drive through a solid red light. Andrade followed the offending car and activated his emergency lights and siren. A chase ensued, during which Andrade obtained the offending car's license plate and determined that the driver was a white male. Andrade communicated this information and the facts of the pursuit to the dispatcher. The offending vehicle accelerated upwards to 70 m.p.h. and repeatedly disobeyed traffic control signals. Andrade continued pursuit, suspecting that the driver was intoxicated and would not voluntarily pull over. Andrade testified that at no time did he consider terminating the pursuit.

At the intersection of South 60th Street and Morgan Avenue, the offending vehicle ran a red light and collided with a vehicle driven by Donald Cavanaugh. As a result of the collision, Cavanaugh died after spending five months in a coma.

The driver of the fleeing vehicle, Gary Allen Zergoski, admitted that he was intoxicated, that he had been using cocaine and that he was driving without a license. Although the roads were primarily dry, there was evidence of icy spots.

On the date of this pursuit, the City had a high speed pursuit policy in effect. Andrade testified that he had been trained with respect to the policy although he could not recall any specifics about the date or substance of the training.

'James H. Cavanaugh, Donald's father, individually, and as administrator of his son's estate, sued the

City, Andrade, and Zergoski. During the trial, Cavanaugh and the City stipulated on the record that damages consisted of $100,000; they also stipulated to the authenticity, reasonableness, and necessity of the medical bills and medical records. After a jury trial, the City was found 23% negligent with respect to implementation of the policy, Andrade was found 2% negligent with respect to the operation of his motor vehicle, and Zergoski was found 75% negligent with respect to the operation of his motor vehicle.

During motions after verdict, Cavanaugh moved for judgment against the City and Andrade in the amount of $250,000, plus costs. The City and Andrade moved for judgment notwithstanding the verdict, contending that they were immune from liability, but the trial court denied the motion. The trial court also determined that the damage stipulation was not binding and set a date for a bench trial to determine damages. The parties, however, agreed to a second stipulation and judgment was entered in the amount of $251,723.15. By entering the second stipulation, however, the City and Andrade reserved, for purposes of appeal, the legal issues of whether the initial damage stipulation was binding and which liability limit applied. Andrade and the City appeal.

## II. DISCUSSION

A. *Immunity.*

The City and Andrade repeatedly argued that immunity existed, relieving them from any liability as a result of the accident. The trial court disagreed, reasoning that the immunity question was more appropriately left to an appellate determination. The

determination of the applicability of a statute to a particular set of facts is a question of law reviewed *de novo*. *See Bitters v. Milcut, Inc.*, 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983).

Section 893.80(4), STATS., provides general immunity to the City and Andrade "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." The terms "quasi-judicial" or "quasi-legislative," and "discretionary" are synonymous. *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 425, 474 N.W.2d 799, 801 (Ct. App. 1991). Therefore, the City and Andrade are afforded immunity only if the conduct for which each has been found negligent involves "discretionary acts."

This state has also defined what is discretionary by excepting what is not discretionary. An act is not discretionary if it is "*ministerial*." *Lister v. Board of Regents*, 72 Wis. 2d 282, 300-01, 240 N.W.2d 610, 621-22 (1976). A ministerial act is defined as conduct that is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes, and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.* at 301, 420 N.W.2d at 622. We address separately whether the City and whether Andrade are immune from liability under the facts and circumstances of this case.

### 1. City

Cavanaugh's theory of negligence against the City related to the City's implementation of the high speed pursuit policy. Cavanaugh's theory had three parts: (1)

that the City was negligent in creating the policy because the policy did not conform with the mandate of § 346.03(6), STATS.; (2) that the City was negligent in training its officers in accord with the policy; and (3) that the City was negligent in supervising officers who were acting pursuant to the policy. Training and supervision involve governmental discretion that entitles the City to immunity. *See, e.g., Sheridan*, 164 Wis. 2d at 430, 474 N.W.2d at 803 (training and supervision involves governmental discretion that is afforded immunity); *see also Liebenstein v. Crowe*, 826 F. Supp. 1174, 1187-88 (E.D. Wis. 1992) (training and supervision are discretionary acts). Therefore, we conclude that, consistent with established precedent, the decisions regarding training and supervision in the instant case are acts involving governmental discretion that entitle the City to immunity.

Nevertheless, one issue remains with respect to the City's liability—because § 346.03(6), STATS., specifically mandates what must be contained in the policy—is a ministerial duty created, and if so, was the City negligent in carrying out its ministerial duty?

Section 346.03(6), STATS., provides in relevant part:

> Every law enforcement agency which uses authorized emergency vehicles shall provide written guidelines for its officers and employes regarding exceeding speed limits . . . and when otherwise in pursuit of actual or suspected violators. The guidelines shall consider, among other factors, road conditions, density of population, severity of crime and necessity of pursuit by vehicle.

We conclude that this statute creates a ministerial duty for law enforcement agencies: the agency *must*

provide written guidelines and those guidelines *must* consider certain factors. Given this statute, if a law enforcement agency fails to provide guidelines to its officers or if the guidelines fail to consider the factors listed in the statute, the agency has breached a ministerial duty.

The promulgation of policies and/or guidelines in general involves a great amount of governmental *discretion*. This statute, however, makes the inclusion of certain parts of the policy promulgation ministerial. The only question we need to decide with respect to the City's immunity, therefore, is whether the high speed pursuit policy complied with the statute. If it complied with the statute, the City is entitled to immunity. If the policy did not comply, the jury determination that the City was negligent encompasses negligence for this ministerial act and, therefore, liability attaches. Before we turn to an examination of the policy, we note that there is no dispute that guidelines were in fact provided. The only dispute is whether the guidelines considered one of the mandatory factors—*severity of crime*. We turn to the policy that provides in pertinent part:

C.  Procedures

These procedures provide Department members with guidelines to follow when engaged in a motor vehicle pursuit.

. . . .

2.  Department Vehicle Operators

a.) A Department vehicle operator shall only engage in a motor vehicle pursuit when:

254

(1) He/she has activated the emergency roof lights and siren if in a marked vehicle or has activated the emergency light and siren if in an unmarked vehicle and the motor vehicle operator refuses to voluntarily comply with the law requiring him to stop.

(2) He notifies the Communications Division dispatcher of the pertinent facts concerning the pursuit and requests assistance in order to apprehend a pursued motor vehicle operator who is taking evasive action to avoid being apprehended.

(3) The speeds involved and/or the maneuvering practices engaged in permit the Department vehicle operator complete control of his vehicle and do not create unwarranted danger to the public or Department members.

(4) The volume of pedestrian and/or vehicular traffic permits continuing the pursuit.

(5) Weather and road conditions are not such that the pursuit becomes inordinately hazardous.

b.) Police officers engaged in the motor vehicle pursuit of a driver who is an IMMEDIATE threat to the safety of the public may take

255

reasonable and prudent measures to apprehend the driver without endangering the welfare of others. However, the deliberate striking of a pursued vehicle or the use of a Department or other vehicle(s) as a stationary barricade is only permitted to be used as a last resort when:

(1) The occupant(s) of the vehicle being pursued is wanted for a serious felony, or

(2) The manner in which the pursued vehicle is being operated creates a substantial risk of serious injury or death.

c.) The Department vehicle operator or supervisor shall terminate a motor vehicle pursuit when in his/her judgment further pursuit is not warranted. Some examples of items to be considered are the volume of pedestrian and/or vehicular traffic, road and weather hazards or the distance between vehicles indicates that further pursuit will create more danger to the public and/or Department members' than does the conduct of the pursued driver.

City of Milwaukee, ORDER # 9491, January 30, 1987.

■ We conclude that the City's guidelines comply with § 346.03(6) STATS. The guidelines instruct officers in pursuit to consider the severity of the crime under sub. 2.b.)(1). Cavanaugh argues that this is insufficient and

that the severity of crime factor should be contained under 2.a.) or 2.c.). In construing a statute, we look first to the language of the statute itself. *State v. Derenne*, 102 Wis. 2d 38, 45, 306 N.W.2d 12, 15 (1981). The statutory language requires that: (1) guidelines regarding pursuits be provided; and (2) that the guidelines consider certain factors, including severity of the crime. It is not disputed that the City provided guidelines. The City's guidelines *do* consider severity—in relation to road blocks. Therefore, the City's policy has satisfied both requirements. Because the current language of the statute does not require the construction Cavanaugh suggests, we reject such a construction. This is a question more appropriately left to the legislature.[1] *See Schanke v. Wisconsin County Mut. Ins. Corp.*, 177 Wis. 2d 746, 754, 502 N.W.2d 866, 869 (Ct. App. 1993) (it is not the court of appeals' function to legislate).

■■

Because the City's policy complies with the requirements of § 346.03(6), STATS., as currently drafted, the City is immune from liability. Therefore, we instruct the trial court to vacate that portion of the judgment and enter judgment consistent with this opinion.

---

[1] The severity of the crime factor is considered within the City's guidelines on pursuits. If the legislature intended for a police officer to consider severity of the crime before he decides to pursue or in the midst of every pursuit, it needs to clarify the statute. The City, in its discretion, chose only to consider severity of the crime with respect to the use of road blocks. By including this consideration, the City has complied with the current dictates of § 346.03(6), STATS.

## 2. Andrade

The next question involves whether Officer Andrade is entitled to immunity. Andrade claims that the only evidence of negligence against him was his decision not to terminate pursuit. Andrade asserts that this decision is a discretionary act that entitles him to immunity. We agree that the decision to initiate and continue pursuit involves governmental discretion and officers should not be liable for such decisions. *See Thornton v. Shore*, 666 P.2d 655 (Kan. 1983) (if only negligence is officer's decision regarding pursuit, officer is entitled to immunity).

Cavanaugh, however, argues that a determination that negligent pursuit is afforded immunity is not dispositive. Cavanaugh asserts that in addressing the immunity issue with respect to Andrade, we must examine the special verdict question. The special verdict question asked: "At and immediately prior to the accident of January 13, 1989, was the defendant, Robert Andrade, negligent with respect to the operation of his motor vehicle?"[2]

As noted, we conclude that the decision to pursue, not to pursue, or to continue to pursue is a discretionary act that entitles officers to immunity. During that pursuit, however, an officer is required to "drive with due regard" in the operation of his motor vehicle. *See* § 346.03(5), STATS. Immunity will not protect an officer

---

[2] Oddly enough, this was the form of special verdict question submitted by counsel on behalf of the City and Andrade. The plaintiffs objected to it and requested the more specific question: "At or prior to the accident on January 13, 1989, was the defendant, Robert Andrade, negligent with respect to his decision to not terminate his pursuit of the Zergoski vehicle?"

258

who fails to exercise due regard in the operation of his motor vehicle. *See* § 346.03(5), STATS.

The jury answered the special verdict question affirmatively—it found that Andrade was negligent with respect to the operation of his motor vehicle.[3] A jury's finding concerning negligence will not be disturbed on appeal unless that determination is entirely unsupported by any credible evidence in the case. *Leatherman v. Garza*, 39 Wis. 2d 378, 386, 159 N.W.2d 18, 23 (1968). Accordingly, we must search the record to determine if there is any credible evidence to support the jury's finding that Andrade negligently operated his motor vehicle.

---

[3] During oral argument, counsel for Andrade and the City argued that the "wording" of the special verdict is not controlling. He argued that the jury understood that Andrade's negligence referred to on the special verdict did not mean "negligent operation of his motor vehicle," but really meant negligence in his decision regarding pursuit. He argued that at the time the special verdict was formulated, he believed the stipulation of $100,000 on damages existed so there was no need to worry about the wording of the special verdict.

We are not persuaded. Whether a stipulation as to damages existed is completely irrelevant because the issue of whether immunity existed still remained. Section 346.03(5), STATS., creates an exception to immunity if an officer is negligent with respect to the operation of his motor vehicle. The "wording" of the special verdict question played a crucial part on how this issue can be reviewed on the appellate level.

Moreover, an issue not supported by evidence sufficient to sustain an affirmative jury finding should not even be submitted to the jury. *See* John A. Decker & John R. Decker, *Special Verdict Formulation in Wisconsin*, 60 MARQ. L. REV. 201, 221 (1970).

In reviewing the record, we note evidence that Andrade's speed may have been too fast for conditions and that the roads were "slippery" with patches of ice. This is consistent with the pleadings, which included allegations of negligent operation of a motor vehicle. We conclude that this evidence is sufficient to support the jury's finding. As a result, the jury's finding cannot be disturbed and Andrade remains liable, under § 346.03(5), STATS., for his negligent operation of a motor vehicle.

Andrade's counsel also argues that public policy relieves Andrade of liability. Public policy considerations can relieve a party from liability where there is otherwise a completed chain of causation between negligence and damages. *Paskiet v. Quality State Oil Co.*, 164 Wis. 2d 800, 810, 476 N.W.2d 871, 875 (1991). Andrade argues that Cavanaugh's injury is either too wholly out of proportion to Andrade's culpability and/or that allowing recovery would place too unreasonable a burden on police officers. We reject Andrade's arguments. Andrade was in pursuit at the time the accident occurred. Arguably, it was at least in part because of that pursuit that the fleeing driver ended up speeding through the intersection where the accident occurred. Therefore, we cannot conclude that Andrade's culpability is wholly out of proportion to the injury.

Moreover, imposing liability in this case does not create an unreasonable burden on police departments. Andrade argues that imposing liability will result in officers refraining from engaging in pursuit and will send a message to other motor vehicle drivers to flee, resulting in an increase in crime. We disagree. This decision stands for the proposition that decisions

regarding pursuit involve governmental discretion and are entitled to immunity. Officers who decide to pursue or make a discretionary decision to continue pursuit will be afforded immunity. Liability will only be imposed when a jury finds that the officer was negligent in the operation of his motor vehicle. The legislature, through § 346.03(5), STATS., has imposed a duty upon police officers who, while engaged in high speed pursuit, fail to exercise due regard in the operation of their motor vehicle.

The special verdict question in this case was clear on its face. It asked if Andrade was negligent with respect to the operation of his motor vehicle. The special verdict question did not ask if Andrade was negligent with respect to his pursuit decisions. The jury answered this question affirmatively—finding that Andrade breached his duty to exercise due regard with respect to the operation of his motor vehicle. This court cannot overturn that jury finding if there is any credible evidence to support it. Even if Cavanaugh's primary theory was negligent pursuit, we are bound by the plain meaning of the record. The record reveals sufficient evidence to uphold the jury finding that Andrade "was negligent with respect to operation of his motor vehicle." Accordingly, we affirm the judgment with respect to Andrade.

## B. Stipulation / Liability Limit.

The next issue is which liability limit applies: the liability limit pursuant to § 893.80, STATS., of $50,000 per person *or* the liability limit pursuant to § 345.05, STATS., of $250,000 for motor vehicle accidents. The determination of the applicability of a statute to a particular set of facts is a question of law reviewed *de novo*. *See Bitters*, 117 Wis. 2d at 49, 343 N.W.2d at 417.

Section 893.80(3), STATS., provides: "The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . governmental subdivision . . . and against their . . . agents or employes for acts done in their official capacity or in the course of their agency or employment . . . shall not exceed $50,000." Section 345.05(3), STATS., which is the statute that creates municipal liability for motor vehicle accidents provides that "the amount recoverable by any person for any damages, injuries or death in any action [under this section] shall not exceed $250,000."

As noted, we conclude that sufficient credible evidence exists in the record to support the jury's finding that Andrade was "negligent with respect to the operation of his motor vehicle." Under the rules of statutory construction, where a general statute conflicts with a specific statute, the specific statute prevails. *See Fred Rueping Leather Co. v. City of Fond du Lac*, 99 Wis. 2d 1, 5, 298 N.W.2d 227, 230 (Ct. App. 1980). Because the jury found that Andrade's negligent operation of his motor vehicle was a substantial factor in causing the fatal motor vehicle accident, we conclude that § 345.05, STATS., applies because it specifically governs motor vehicle accidents. The more specific statutory language of § 345.05 controls over the less specific language of § 893.80(3), STATS. As a result, we must conclude that the $250,000 liability limit of § 345.05 applies.

Nevertheless, we hold that recovery against the City and Andrade is limited to $100,000 because of the stipulation that was entered into, on the record, prior to the close of the plaintiffs' case-in-chief.

262

Prior to the close of the plaintiffs' case, the attorney for the City and Andrade, and the attorney for the plaintiffs, entered into the record the following stipulation:

[Plaintiffs' Counsel]: [W]hy don't we just do the stipulation at this point. What we've done, Your Honor, is counsel for the defendants and I have stipulated to $50,000 on the loss of consortium claim for James Cavanaugh, $50,000 for the conscious pain and suffering of Donald Cavanaugh.

What we've also stipulated to is the admissibility of some exhibits. . . .

[The City Attorney]: I just want to back up so there's no confusion about the record. [Plaintiffs' Counsel] is correct. We did stipulate, but I want the record to reflect why the numbers were chosen because the case comes within the cap or limits of—I think—893.80(4) and that's the $100,000. There's [sic] two parties. There's the estate and conscious pain and suffering, so that's the limits of the $100,000, so that's why we stipulated. Basically just so the record has it, the philosophy being if there is liability, based on the severity of the injuries, it would have been over $100,000, so we stipulate he would have gotten $100,000.

. . . .

[Plaintiffs' Counsel]: The other thing is, we have agreed to the admissibility of certain documents and records here. . . . What I understand our stipulation to be in terms of the bills, to the reasonableness, necessity and authenticity of them as well as the medical records. We've stipulated to the authenticity and admissibility of those.

. . . .

[The City Attorney]: That's correct, Your Honor. That stipulation is correct. We will stipulate to the

263

reasonableness and necessity and authenticity of the medical bills and expenses and also the documents.

During motions after verdict, the plaintiffs reneged on the stipulation and requested judgment against the City and Andrade in the amount of $250,000. The trial court determined that there was no "meeting of the minds" as to the oral stipulation. We disagree.

Whether a stipulation was validly entered into is a question of law, which we review *de novo*. *See Steven G. v. Herget*, 178 Wis. 2d 674, 681-84, 505 N.W.2d 422, 424-26 (Ct. App. 1993). For a stipulation to be binding, it must either be made in writing or "made in court . . . and entered in the minutes or recorded by the reporter." Section 807.05, STATS. In the instant case, both requirements were satisfied. The stipulation that the City, if liable, would pay a total of $100,000 in damages was made *in court* and *recorded* by the reporter. Although the trial court determined the stipulation was not binding because there was not a meeting of the minds, we disagree. The confusion with respect to the stipulation arose because in addition to the $100,000 damage stipulation, the City also stipulated to the authenticity, reasonableness and necessity of the medical bills and medical records.

During oral argument to this court, however, the counsel for Cavanaugh admitted that the reason for the stipulation as to the reasonableness, authenticity and necessity of the medical bills and records was to preserve a claim for total medical expenses against Zergoski. The ineluctable inference arises that, in all likelihood, at some point between the original stipulation and motions after, the plaintiff discovered the

existence of the $250,000 liability limit. Although such a discovery may be sufficient to void the stipulation based on mistake or misrepresentation, *see Burmeister v. Vondrachek*, 86 Wis. 2d 650, 664, 273 N.W.2d 242, 248-49 (1979) (a stipulation may be voided upon motion under § 806.07(1), STATS., if it was entered into because of fraud, mistake or misrepresentation), the plaintiff failed to move for voidance of the stipulation. Instead, the plaintiff argued the stipulation as to the medical bills constituted an agreement that the City would pay *both* the $100,000 noneconomic damages and the medical bills. As previously noted, the record does not support this contention. Because the plaintiff entered into a binding stipulation and failed to raise the issue of voiding the binding stipulation, we cannot release him from his agreement.

In sum, we conclude that § 345.05, STATS., applies and, therefore, the cap of $250,000 would normally apply; however, because the plaintiff entered into a stipulation on damages with the City and Andrade, the plaintiff's total recovery from the City is limited to $100,000.

## C. *Medical Expenses.*

Next, the City argues that Cavanaugh is not entitled to make a claim for medical expenses incurred because the medical bills were paid by a third party (Milwaukee County) who was not joined as a party in this action.[4] Cavanaugh responds that this case was brought under the wrongful death statute, which specifically provides that the individual who brings the

---

[4] As noted, Milwaukee County did move to intervene after the jury trial. The trial court denied the motion based on untimeliness. That decision is not on appeal.

action can recover medical expenses on behalf of the third party who paid the expenses. The statute provides in pertinent part:

> If the personal representative brings the [wrongful death] action the personal representative may also recover the reasonable costs of medical expenses . . . . If a relative brings the action, the relative may recover such medical expenses . . . on behalf of himself or herself of any person who has paid or assumed liability for such expenses.

Section 895.04(5), STATS. The determination of the applicability of a statute to a particular set of facts is a question of law reviewed *de novo*. *See Bitters*, 117 Wis. 2d at 49, 343 N.W.2d at 417. Based on this statute, we conclude that Cavanaugh is entitled to recover the medical expenses on behalf of Milwaukee County. The statute specifically provides that a "relative may recover such medical expenses on behalf of himself or herself or of any person who has paid or assumed liability for such expenses." This statute does not require the "person who paid the medical expenses" to be joined. The statute allows the relative who brings the action, (in this case, Cavanaugh), to assert a claim for medical expenses on behalf of the County, *if* he chooses to do so. Cavanaugh has chosen to assert a medical expense claim on the County's behalf and, therefore, he is entitled to recover the medical expenses.

The City claims that Cavanaugh could not assert a claim for medical expenses because the County held the subrogated interest pursuant to § 49.65(2), STATS. The City claims that because Cavanaugh did not join the County, he is precluded from asserting a claim for medical expenses. We disagree. Section 49.65, STATS., does not prohibit Cavanaugh from bringing the medical expense claim on the County's behalf. Our decision

should not be interpreted to mean that Cavanaugh is entitled to retain any proceeds he might recover for the medical expenses. During oral argument, Cavanaugh's attorney admitted that the County is subrogated to the medical expense claim because the County paid the medical costs. The County is entitled to any recovery for medical costs. Cavanaugh, however, can make a claim for the medical expenses *on behalf* of the County. Given the decision above regarding the binding damage stipulation, however, the plaintiff cannot recover the medical expenses from the City or Andrade.

## III. CONCLUSION

In summary, we conclude that the City's high speed pursuit policy complies with § 346.03(6), STATS., and that training and supervision involve discretionary acts. Therefore, the City is immune from liability. We also conclude that, based on the jury finding that Andrade was negligent with respect to the operation of his motor vehicle, he is not entitled to immunity based on § 346.03(5), STATS.

We conclude that the liability limit of § 345.05, STATS., applies because this was a motor vehicle accident case; however, because Cavanaugh stipulated to a total of $100,000 damages with the City and Andrade, he is bound by that stipulation. Finally, we determine that Cavanaugh is entitled to recover medical expenses incurred on behalf of the County.

We instruct the trial court to vacate the existing judgment and enter judgment consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with instructions.

SCHUDSON, J. (*concurring in part; dissenting in part*). Section 346.03(6), STATS., requires, in relevant part, that every law enforcement agency "shall provide written guidelines for its officers and employes regarding . . . pursuit." It also requires that "[t]he guidelines shall consider, among other factors,. . . severity of crime and necessity of pursuit." The City's guidelines do not comply.

C.2.a. specifies that police "shall only engage in a motor vehicle pursuit when . . . ." It then sets forth the guidelines governing the officer's discretionary decision to pursue. These guidelines, to be in compliance with § 346.03(6), STATS., would have to consider "severity of crime." These guidelines fail to do so. The guidelines of C.2.a. do not include any reference to the severity of crime. Instead, the City's policy explicitly postpones that consideration until C.2.b. and its criteria for "the deliberate striking of a pursued vehicle or the use of a Department or other vehicle(s) as a stationary barricade." That latter subsection, however, explicitly refers only to " *[p]olice officers engaged in the motor vehicle pursuit*"—i.e., only those officers already in pursuit—and further, only in situations involving potential deliberate vehicle striking or vehicle barricading.

Of course, striking and barricading occur in only a very small fraction of police pursuits. Clearly, by postponing consideration of "severity of crime" to the limited number of pursuits that may come to include striking or barricading, the City's policy has failed to comply with the statute.

I hasten to add that the inclusion of "severity of crime" in the guidelines would *not* reduce the discretion of police or the promptness of their response to a fleeing suspect. The law requires that, in deciding

whether to pursue, an officer "consider" the severity of crime. The law does not, however, require that the officer *know* the severity of crime. The difference is important. After all, part of an officer's sound discretionary decision will depend, in some cases for example, on whether a radio dispatch has just alerted police to a suspected armed rapist or to an unarmed shoplifter. According to the law, the officer shall consider that. At other times, however, an officer will have no such knowledge and, therefore, will decide whether and how to pursue on the basis of the other required factors, *in combination with the uncertainty about the severity of crime.*

The City had a ministerial duty to comply with the law. The City's policy at issue in this case fails to comply. That failure vitiates the apparent legislative mandate to assure that *all* officers in *all* situations in which they must decide whether to engage in high speed pursuit—not just those officers involved in striking and barricading decisions—consider the severity of crime. Thus, the City failed its ministerial duty to provide a guideline under which Andrade was required to operate and, therefore, the City does not have immunity in this case. Accordingly, on this issue, I respectfully dissent.

Additionally, although I concur in the result, I write separately to express my concern about the failure to analyze the effect of § 803.03(2)(a), STATS., the mandatory joinder rule for subrogated parties, in relation to § 895.04(5), STATS., the wrongful death statute. Section 803.03(2)(a) states:

> A party asserting a claim for affirmative relief *shall* join as parties to the action all persons who at the commencement of the action have claims based upon subrogation to the rights of the party assert-

ing the principal claim, derivation from the principal claim, or assignment of part of the principal claim. . . . Any public assistance recipient or any estate of such a recipient asserting a claim against a 3rd party for which the public assistance provider has a right of subrogation or assignment under s. 49.65(2) or (3) *shall* join the provider as a party to the claim. Any party asserting a claim based upon subrogation to part of the claim of another, derivation from the rights or claim of another, or assignment of part of the rights or claim of another *shall* join as a party to the action the person to whose rights the party is subrogated, from whose claim the party derives his or her rights or claim, or by whose assignment the party acquired his or her rights or claim.

(Emphasis added.) Although not at issue in this case, the statute requires joinder. Accordingly, it would be prudent for counsel in wrongful death cases to join subrogated parties.