AMERICAN INSURANCE COMPANY and others, Respondents, v. CITY OF MILWAUKEE, Appellant.

*No. 279. Argued May 5, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 142.)

348

"...

350

For the appellant there were briefs by *John J. Fleming,* city attorney, and *Thomas E. Hayes,* assistant city attorney, and oral argument by *Mr. Hayes.*

For the respondents there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

ROBERT W. HANSEN, J.  This case is almost a rerun of the appeal involving other insurance carriers similarly situated and the city of Milwaukee. [1]

What is different is that the insurers then sought reimbursement from the city as subrogees. Now they seek such reimbursement as assignees. They have changed costumes. Where earlier they appeared in the garments of equity-seeking subrogees, they return clad in the armor plate of assignees. Their claim, with which the trial court agreed, is that the change in attire entitles them to receive at law exactly what they were denied in equity. However, what was intended as a change in role, on analysis turns out to be no more than a change in outer dress, leaving unchanged their role, their rights and the result.

This second time around appears based upon an assumption that subrogation is subrogation, entirely a creature of equity, and assignment is assignment, entirely a consequence of contract, and never the twain shall meet.

[1] *Interstate Fire & Casualty Co. v. Milwaukee* (1970), 45 Wis. 2d 331, 173 N. W. 2d 187.

The fault with such "either-or" oversimplification is that it ignores the fact that there are two types of subrogation.

Subrogation is either "legal" or "conventional." [2] What is almost misleadingly termed "legal" subrogation has its source in equity and arises solely by operation and application of equitable principles.[3] It derives from an equitable doctrine, that of preventing unjust enrichment,[4] and is not dependent upon contract or privity.[5] For example, it is applied when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another.[6]

However, there is a second type of subrogation, conventionally termed "conventional subrogation," which does arise from the acts of the parties, and does rest on contract.[7] One example of "conventional subrogation" is involved where health insurance contracts contain provisions for subrogation of payments made to the insured, when the insured is injured by the negligent acts of a third person. Another example of "conventional subrogation" is presented by the pleadings and record in this case, for the insurers set forth and rely upon the statute, prescribing a standard fire insurance policy and specifically providing:

"**Subrogation.** This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company." [8]

---

[2] *See:* 83 C. J. S., *Subrogation,* pp. 583–587, Secs. 3 and 4.

[3] 83 C. J. S., *Subrogation,* p. 583, sec. 3.

[4] *Lee v. Threshermen's Mut. Ins. Co.* (1965), 26 Wis. 2d 361, 365, 132 N. W. 2d 534.

[5] *Perkins v. Worzala* (1966), 31 Wis. 2d 634, 637, 143 N. W. 2d 516.

[6] *D'Angelo v. Cornell Paperboard Products Co.* (1963), 19 Wis. 2d 390, 399, 120 N. W. 2d 70.

[7] 83 C. J. S., *Subrogation,* p. 586, sec. 4.

[8] Sec. 203.01, Stats. (Enlargement of coverage to include additional perils is expressly permitted by sec. 203.06. Such endorsements become part of the policy and all parts are to be read

Respondents contend that the heading of this section, "subrogation," is a legislative error or aberration. On the contrary, the section, heading and content, clearly establish a "conventional subrogation" with the right to require from the insured an "assignment of all right of recovery," the opportunity to establish the contractual basis upon which a "conventional subrogation" is based.

In the *Interstate Case* this court held that the "subrogation" clause of the standard fire insurance policy did not authorize recovery by insurers from an innocent person or party who did not cause the loss or damages involved. The element of "wrongful act of another," not being present, as it usually is in subrogation claims in insurance cases,[9] the insurers, seeking equitable relief as "legal subrogees," were held not entitled to subrogation against the city. The reasoning and result are no different with the insurers returning as "conventional subrogees" seeking the same reimbursement on an identical set of facts. Subrogation is recognized or denied upon equitable principles, without differentiation between "legal subrogation," arising by application of equity, or

together.) *See: Riteway Builders, Inc. v. First National Ins. Co.* (1964), 22 Wis. 2d 418, 126 N. W. 2d 24.

[9] "'. . . As a general rule, therefore, applicable to insurance and indemnity contracts of all kinds, the insurer, on paying to the insured the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action *against any other person responsible for the loss.* Likewise, *where the tortious conduct of a third person is the cause of a loss* covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated *pro tanto* by operation of law to whatever right the insured may have *against the wrongdoer.* The theory is that to permit the insured to receive payment *from both the wrongdoer and the insured* would be to give him a double compensation for his loss . . . .'" (Emphasis supplied.) 8 Couch, *Insurance* (1st ed.), p. 6590, sec. 1997, quoted with approval as giving the rationale for subrogation in *D'Angelo v. Cornell Paperboard Products Co., supra,* at page 401.

"conventional subrogation," arising from contracts or acts of the parties.[10]

In point of fact, the denial of the claim of right to subrogation in the *Interstate Case* was based on three grounds: (1) equitable principles;[11] (2) public policy;[12] and (3) statutory construction.[13] All three bar-

[10] "Moreover, subrogation is to be accorded upon equitable principles even though the right thereto, as authorized by statute in respect of policies of insurance (Act of April 25, 1945, P. L. 307, sec. 1, 40 PS sec. 657), is contractually declared. . . . the right of subrogation exists wholly apart from contractual provision and, in any instance, is to be enforced equitably." *Roberts v. Fireman's Ins. Co. of N. J.* (1954), 376 Pa. 99, 107, 101 Atl. 2d 747, 750, 751.

[11] ". . . In paying the losses the respondents merely discharged their own obligation and not an obligation for which the city was primarily liable as a tort-feasor.

"As stated earlier, an absolute liability statute such as sec. 66.091, by its very nature and definition, does not render one a wrongdoer since liability is imposed without fault.

". . . we do not infer that subrogation is unavailable in all cases in which insurance companies have received premiums, but merely deny its application where, as here, the party against whom subrogation is sought is not a wrongdoer. . . ." *Interstate Fire & Casualty Co. v. Milwaukee, supra,* at pages 338, 339.

[12] "In sustaining a demurrer to the complaint [in *William Burford & Co. v. Glasgow Water Co.* (1928), 223 Ky. 54, 2 S. W. 2d 1027] the court, at pages 57 and 58, held that to have applied the subrogation doctrine would have been inimical to sound public policy. . . .

"In the instant case application of the doctrine would cause a similar result. While insurance companies, after receiving their premium, would continually be assured of recovery, the members of the community, who had not caused or participated in riots, would be forced to bear the risk for which insurance companies had received premiums." *Id.* at page 339.

[13] ". . . The instant statute, however, imposes liability without regard to whether a city has caused the riot's commencement or continuation. We believe that liability which is imposed for that which one has not even caused is not imposed on the basis of fault or wrongdoing. On the contrary, it is imposed upon the basis of a public policy aimed at compensating unfortunate citizens." *Id.* at page 335.

riers to reimbursement stand as to a "conventional subrogee," his status based on contract, as well as to a "legal subrogee," his claim of right based on equity. In fact, the last two grounds—public policy and statutory construction—would bar reimbursement even if the insurers here had entirely escaped the status of subrogees and appeared here only as assignees, that and nothing more. Assignments, when against public policy, have been held void by this court. In *D'Angelo v. Cornell Paperboard Products Co., supra,* an assignment of a $300,000 personal injury claim to an insurer upon payment of $120,000 was voided as against sound public policy, the court quoting from an earlier case stating:

" 'Contracts are against public policy when they tend to injure the state or the public. "Public policy is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." ' " [14]

Additionally, with the statute being construed as intended and enacted solely for "compensating unfortunate citizens" who are victims of riots, the door seems closed to reimbursement to insurers under any theory or approach.[15] The *Interstate Fire & Casualty Co.* decision closed the door; this decision securely locks it against chance of reimbursement for the insurers from the city on this set of facts.

We see no merit in the city's contention that the filing of the amended complaint was barred by sec. 62.25 (1)

[14] *Hawkins Realty Co. v. Hawkins State Bank* (1931), 205 Wis. 406, 416, 236 N. W. 657.

[15] "If Insurers have no right to subrogation, their position is not improved by the assignments to them of insured's claim. . . ." *American Surety Co. v. Bank of California* (9th Cir. 1943), 133 Fed. 2d 160, 164, cited with approval in *Bank of Fort Mill v. Lawyers Title Ins. Corp.* (4th Cir. 1959), 268 Fed. 2d 313, 316, as making clear the "fallacy in this reasoning" that the "assignment converted the right to a *legal* right and prevented the Court from applying equitable principles. . . ."

(e), Stats.[16] We would find sec. 269.44 permitting the amending of pleadings,[17] to apply, along with sec. 269.52 allowing amended pleadings where demurrer has been sustained or remedy mistaken.[18] Remedial statutes of this type are to be liberally construed.[19] The trial court acted properly in permitting the filing of an amended complaint by the plaintiffs-respondents in this proceeding. The same is not to be said of the trial court overruling the demurrer of defendant-appellant. The demurrer to the complaint should have been sustained.

*By the Court.*—Order granting motion of plaintiffs-respondents to amend pleadings is affirmed. Order overruling demurrer of defendant-appellant is reversed, with costs to the defendant-appellant.

---

[16] Sec. 62.25 (1) (e), Stats., providing:

"(e) Disallowance by the council shall bar any action founded on the claim unless brought within 6 months after service of notice of disallowance, or after disallowance if the address was not furnished as aforesaid."

[17] Sec. 269.44, Stats., providing:

"**Amendments of processes, pleadings and proceedings.** The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

[18] Sec. 269.52, Stats., providing:

"**Mistaken remedy; no dismissal; amendment; transfer to court having jurisdiction.** In all cases where upon objection taken or upon demurrer sustained or after trial it shall appear to the court that any party claiming affirmative relief or damages has mistaken his remedy, his action, proceeding, cross complaint, counterclaim, writ, or relation shall not be finally dismissed or quashed, but costs shall be awarded against him and he shall be allowed a reasonable time within which to amend and the amended action or proceeding shall continue in that court . . . ."

[19] *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 375, 149 N. W. 2d 626.