John J. Petta and Rachelle DeValk, Plaintiffs-Respondents-Petitioners,

v.

ABC Insurance Co., DEF Insurance Co., and GHI Insurance Co., Defendants,

The Travco Insurance Co., Defendant-Appellant.

Supreme Court

*No. 03–0610. Oral argument September 21, 2004.—Decided February 24, 2005.*

2005 WI 18

(Also reported in 692 N.W.2d 639.)

254

For the plaintiffs-respondents-petitioners there was a brief by *D. James Weis* and *Habush Habush & Rottier, S.C.,* Rhinelander, and oral argument by *Dana J. Weis.*

For the defendant-appellant there were briefs (in the court of appeals) by *Steven L. Theesfeld* and *Yost & Baill,* Minneapolis, Minnesota, and oral argument by *Gary L. Wickert* and *Matthiesen, Wickert & Lehrer, S.C.,* Hartford.

An amicus curiae brief was filed by *William C. Gleisner, III,* and *Law Offices of William C. Gleisner, III,* on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. LOUIS B. BUTLER, JR., J. Wrongful death plaintiffs John J. Petta and Rachelle DeValk ("John and Rachelle") seek review of a court of appeals decision[1] that concluded (1) they were not entitled to retain damages for medical, funeral, and property damage expenses because they did not pay for these expenses; and (2) the "made-whole" doctrine recognized in *Rimes v. State Farm Mutual Automobile Insurance Co.,* 106 Wis. 2d 263, 316 N.W.2d 348 (1982), did not preclude Travco Insurance Company's ("Travco") subrogation rights because John and Rachelle were not Travco's insureds.

¶ 2. John and Rachelle argue that equity requires that *Rimes* and the settlement procedure outlined in *Schulte v. Frazin,* 176 Wis. 2d 622, 500 N.W.2d 305 (1993), be extended to wrongful death plaintiffs. We agree. Our conclusion is driven by a wrongful death plaintiff's statutory right to waive and satisfy the estate's cause of action in connection with or as part of a settlement and discharge of the claim.[2] A wrongful death plaintiff also has a statutory right to claim and

---

[1] *Petta v. ABC Ins. Co.,* 2003 WI App 241, 268 Wis. 2d 153, 672 N.W.2d 146.

[2] Wis. Stat. § 895.04(6) (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version, unless otherwise noted.

257

recover medical and funeral expenses on behalf of himself or herself or any person who has paid or assumed liability for such expenses.[3] We acknowledge that a wrongful death relative is not necessarily entitled to retain the proceeds for such claims under the statute unless the relative incurs the costs of those expenses. Nevertheless, because John and Rachelle settled with the tortfeasor for a lump sum of money that Travco stipulated did not make them whole, we conclude that Travco's subrogation rights against the tortfeasor are extinguished. Consequently, we reverse the court of appeals' decision.

## I

¶ 3. On November 14, 2001, John and Rachelle's mother, Dayle Petta, was killed in an automobile accident caused by Byron Schroeder. Dayle's former husband, Alfred, had an automobile insurance policy issued by Travco that insured Dayle's vehicle, the vehicle she was driving at the time of the accident. Travco paid in excess of $14,000 under its insurance policy for Dayle's funeral and medical expenses and for the damage to the wrecked vehicle.

¶ 4. Because Dayle was not married at the time of her death, Dayle's surviving adult children, John and Rachelle, commenced a wrongful death action against Schroeder, Whiplash Lake Resort (the owner of the vehicle Schroeder was driving), West Bend Insurance Company (Schroeder's and Whiplash's automobile liability insurer), and three fictitious insurance companies. Believing Travco had a subrogation interest due to the over $14,000 in benefits it already paid, John and

---

[3] Wis. Stat. § 895.04(5).

Rachelle also named Travco as a nominal defendant pursuant to Wis. Stat. § 803.03(2)(a) (2001–02).[4]

¶ 5. John and Rachelle claimed Schroeder's negligence was a proximate cause of Dayle's death and that as a result they have "incurred expenses relating to the death of their mother" and have been, and will continue to be, "deprived of the society and companionship of their mother." Travco cross-claimed against Schroeder, Whiplash Lake, and West Bend, asserting a subrogation claim for the $14,000 it previously paid.

¶ 6. In late August 2002, Travco notified the other defendants that John and Rachelle were not its insureds and thus contended that any settlement with or release by John and Rachelle would not bar its subrogation claim. On September 30, 2002, John and Rachelle settled with these other defendants for $280,000 ($250,000 from West Bend and $30,000 from Schroeder), and released and agreed to indemnify them from any of Travco's claims.

---

[4] Wisconsin Stat. § 803.03(2)(a) provides:

> A party asserting a claim for affirmative relief shall join as parties to the action all persons who at the commencement of the action have claims based upon subrogation to the rights of the party asserting the principal claim, derivation from the principal claim, or assignment of part of the principal claim. For purposes of this section, a person's right to recover for loss of consortium shall be deemed a derivative right. Any public assistance recipient or any estate of such a recipient asserting a claim against a 3rd party for which the public assistance provider has a right of subrogation or assignment under s. 49.89 (2) or (3) shall join the provider as a party to the claim. Any party asserting a claim based upon subrogation to part of the claim of another, derivation from the rights or claim of another, or assignment of part of the rights or claim of another shall join as a party to the action the person to whose rights the party is subrogated, from whose claim the party derives his or her rights or claim, or by whose assignment the party acquired his or her rights or claim.

¶ 7. Following the settlement, John and Rachelle moved for a *Rimes* hearing with Travco and sought an order extinguishing Travco's subrogation rights against the tortfeasor. John and Rachelle maintained that they were entitled to bring a claim for funeral and medical expenses pursuant to Wis. Stat. § 895.04(5),[5] and that they had a claim for the value of the destroyed car as a "pecuniary injury" under Wis. Stat. § 895.04(4).[6] However, they submitted that they nonetheless had not been made whole for their damages.[7] Because Travco stipulated that the entire settlement did not make John and Rachelle whole, John and Rachelle argued that Travco no longer had subrogation rights.

¶ 8. Travco resisted, claiming that because John and Rachelle were not its insureds, *Rimes* and its progeny simply did not apply. The trial court disagreed.

---

[5] Wisconsin Stat. § 895.04(5) states:

> If the personal representative brings the action, the personal representative may also recover the reasonable cost of medical expenses, funeral expenses, including the reasonable cost of a cemetery lot, grave marker and care of the lot. If a relative brings the action, the relative may recover such medical expenses, funeral expenses, including the cost of a cemetery lot, grave marker and care of the lot, on behalf of himself or herself or of any person who has paid or assumed liability for such expenses.

[6] Wisconsin Stat. § 895.04(4) provides:

> Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

[7] Wisconsin Stat. § 895.04(4) caps John and Rachelle's damages at $350,000 for loss of society and companionship.

The trial court concluded that because the settlement did not make John and Rachelle whole, and because they agreed to indemnify the tortfeasors, Travco could not pursue a subrogation claim against the tortfeasors.

¶ 9. Travco appealed, and, in the published opinion of *Petta v. ABC Insurance Co.,* 2003 WI App 241, 268 Wis. 2d 153, 672 N.W.2d 146, the court of appeals reversed. Although John and Rachelle did not pay for Dayle's medical or funeral expenses or for the damage to her vehicle, the court agreed that John and Rachelle owned claims for these damages, but concluded their ownership was not exclusive. *Id.,* ¶ 9. The court concluded that John and Rachelle could bring these claims on behalf of the payor, Travco, and were not entitled to retain any recovery on these claims because they did not pay for the expenses. *Id.* According to the court of appeals, "[t]here should be no recovery where there is no injury."[8] *Id.,* ¶ 12.

¶ 10. The court of appeals also rejected John and Rachelle's argument that the *Rimes* made-whole doctrine precluded Travco's subrogation claims. The court held that *Rimes* applied only in situations of an insurer-insured relationship. *Id.,* ¶¶ 13–14. Because it was undisputed that John and Rachelle were not Travco's insureds, the court concluded that the made-whole doctrine was inapplicable. *Id.* In closing, the court supposed that if *Rimes* were applied in this situation, it would set a dangerous precedent. *Id.,* ¶ 16. The court posited:

***

[8] Because of this conclusion, the court declined to consider whether "pecuniary injury" under Wis. Stat. § 895.04(4) includes the monetary value of Dayle's wrecked automobile. *Petta,* 268 Wis. 2d 153, ¶¶ 10–12.

If there were multiple plaintiffs against a common tortfeasor based on a single incident, the plaintiffs could "race" to settlement. The first to settle and indemnify the tortfeasor could show that he or she was not made whole and, if *Rimes* applied, extinguish not only subrogation claims but also the other plaintiffs' claims. This takes *Rimes* to a place it was never intended to go.

*Id.*

¶ 11. We accepted John and Rachelle's petition for review, and we reverse.

## II

¶ 12. Whether a party's subrogation rights limit a plaintiff's right to recovery is a question of law we review de novo. *See Koffman v. Leichtfuss,* 2001 WI 111, ¶ 20, 246 Wis. 2d 31, 630 N.W.2d 201. This case also requires interpretation of the wrongful death statute, as well as consideration of whether the made-whole doctrine applies to wrongful death plaintiffs. Both issues are questions of law we review de novo. *See Ruckel v. Gassner,* 2002 WI 67, ¶ 13, 253 Wis. 2d 280, 646 N.W.2d 11.

## III

¶ 13. As part of their wrongful death claim, John and Rachelle have asserted claims for medical and funeral expenses, and have disposed of a potential claim for property damage expenses. Travco has paid for all of these underlying expenses, and, accordingly, John and Rachelle agree that Travco has subrogated interests in these claims. They further agree that they are not Travco's insureds. Nevertheless, they argue that because

subrogation and its antisubrogation counterpart embodied in *Rimes* are fundamentally equitable doctrines, *Rimes* should apply to preserve their settlement proceeds that all parties agree have not made them whole.

¶ 14. Travco counters by arguing that the *Rimes* made-whole doctrine applies only within the confines of an insurer/insured relationship. Because John and Rachelle are not its insureds, Travco contends that *Rimes* protections simply do not apply to extinguish its subrogation interests. Travco further argues that if *Rimes* is extended beyond an insurer/insured relationship, then in cases with multiple plaintiffs, those plaintiffs will be pitted against one another to race to settle with the defendant first in order to thwart the other plaintiffs' rights by asserting the settlement did not make the settling plaintiff whole.

¶ 15. We agree with John and Rachelle that equity requires extending *Rimes* to wrongful death plaintiffs. We begin with a discussion of the wrongful death statute and how that permits John and Rachelle to control the claim for property damage to Dayle's wrecked vehicle as well as to claim medical and funeral expenses even though they did not pay for these expenses. From there, we discuss subrogation principles and why the "antisubrogation" rule of the made-whole doctrine should be extended to wrongful death plaintiffs. And before closing, we comment on Travco's and the court of appeals' concern that extending *Rimes* outside the insurer/insured relationship will result in injustice.

A

¶ 16. A wrongful death action is purely a creature of statute, since at common law no such right to

recovery existed. *Weiss v. Regent Properties, Ltd.*, 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984). The purpose of the wrongful death statute, Wis. Stat. § 895.04, is "to compensate for loss of the relational interest existing between the beneficiaries and the deceased." *See Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 560–61, 514 N.W.2d 399 (1994) (citations omitted). To this end, § 895.04(4) allows wrongful death plaintiffs to recover pecuniary injury, as well as loss of society and companionship.

¶ 17. A "pecuniary injury" is the loss of any benefit that a beneficiary would have received from the decedent if the decedent had lived. *See Holt v. State Farm Fire & Cas. Co.*, 151 Wis. 2d 455, 460, 444 N.W.2d 453 (Ct. App. 1989). This includes claims for loss of support, contribution, and inheritance. *See Schaefer v. Am. Fam. Mut. Ins. Co.*, 192 Wis. 2d 768, 792, 531 N.W.2d 585 (1995); *Holt*, 151 Wis. 2d at 460; 1 *The Law of Damages in Wisconsin* §§ 16.29 (Russell M. Ware ed., 3d ed. 2000). A lost inheritance is "the pecuniary value of the addition to the estate which the decedent in reasonable probability would have accumulated and left to his or her heirs had the decedent lived a natural life span." *Schaefer*, 192 Wis. 2d at 775.

¶ 18. Concerning the property damage, Travco notes that John and Rachelle did not establish that they would have derived a benefit from the vehicle had Dayle survived; nor did they establish a reasonable probability that Dayle would have left the vehicle to them. Thus, Travco argues John and Rachelle are not entitled to retain any settlement proceeds for the property damage expense.

264

¶ 19. John and Rachelle argue that they might have inherited the vehicle; they just have not established this yet. Alternatively, John and Rachelle argue that if this claim belonged to Dayle's estate, Wis. Stat. § 895.04(6) provides that where a person's wrongful death "creates a cause of action" in favor of both the decedent's estate and a spouse or relative, "such spouse or relatives may waive and satisfy the estate's cause of action in connection with or as part of a settlement and discharge of the cause of action of the spouse or relatives."[9]

██

¶ 20. Wrongful death beneficiaries are not automatically entitled to recover for pecuniary loss resulting from a parent's wrongful death. *Keithley v. Keithley,* 95 Wis. 2d 136, 138, 289 N.W.2d 368 (Ct. App. 1980). It is well-established that "the survivors must prove their loss." *Id.* Travco correctly notes that John and Rachelle have not established they incurred any inheritance loss or loss of benefit due to the vehicle's destruction. But we agree with John and Rachelle that Wis. Stat. § 895.04(6) empowers them to control the settlement of any claims the estate had against the tortfeasor.

¶ 21. Here, the accident that caused Dayle's death clearly created a cause of action for property damage in favor of her estate. Consequently, to the extent that they have a cause of action, John and Rachelle were allowed to "waive and satisfy" that cause of action "in

---

[9] Wisconsin Stat. § 895.04(6) reads:

Where the wrongful death of a person creates a cause of action in favor of the decedent's estate and also a cause of action in favor of a spouse or relatives as provided in this section, such spouse or relatives may waive and satisfy the estate's cause of action in connection with or as part of a settlement and discharge of the cause of action of the spouse or relatives.

connection with or as part of" their wrongful death settlement. *See* Wis. Stat. § 895.04(6). Having apparently done so as part of their full settlement and release, the question is what happens to Travco's subrogated interest for the payments it made for the property damage.

¶ 22. Before answering that question, we must next turn to John and Rachelle's ability to claim the medical and funeral expenses Travco has already paid, for these claims also carry Travco's subrogated interests.

B

¶ 23. The wrongful death statute allows relatives of the deceased to seek more than the "loss of relational interest existing between the beneficiaries and the deceased." *See Chang,* 182 Wis. 2d at 560–61. The legislature has specifically provided the relative of a decedent a claim to recover expenses that the relative may not have incurred. Wisconsin Stat. § 895.04(5) states, "the relative may recover such medical expenses, funeral expenses, including the cost of a cemetery lot, grave marker and care of the lot." Recovery is not contingent on the relative having paid these expenses, as the claim can be made "on behalf of himself or herself or any person who has paid or assumed liability for such expenses."[10] *Id.*

¶ 24. John and Rachelle agree they did not pay for the medical or funeral expenses, but claim that because the statute specifically gives them the right to claim

---

[10] Had Dayle not died, it is well-settled that she could have brought a claim for medical expenses. *See Koffman v. Leichtfuss,* 2001 WI 111, ¶ 46, 246 Wis. 2d 31, 630 N.W.2d 201.

funeral and medical expenses, they are nonetheless entitled to recover them. John and Rachelle are correct. In *Chang,* 182 Wis. 2d at 561, this court concluded that "[t]he right to sue and recover under the wrongful death statute is vested in the classes of beneficiaries listed in the statute."[11] John and Rachelle are among the beneficiaries listed in the statute. *See* Wis. Stat. § 895.04(2). Thus, John and Rachelle have the right to claim and recover funeral and medical expenses, even though they did not pay for them.[12]

---

[11] A wrongful death action is also designed to compensate for the loss of the relational interest existing between the beneficiaries and the decedent. *Wurtzinger v. Jacobs,* 33 Wis. 2d 703, 709–10, 148 N.W.2d 86 (1967); *Weiss v. Regent Properties, Ltd.,* 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984).

[12] It is unclear on whose behalf John and Rachelle brought this claim. At oral argument, John and Rachelle initially suggested that they brought it on their mother's behalf, since the mother's estate would have brought the claim if they had chosen to fashion the wrongful death action on behalf of the estate. *See* Wis. Stat. § 895.04(1) (allowing a wrongful death action to be brought "by the personal representative of the deceased person or by the person to whom the amount recovered belongs"); § 895.04(5) (allowing personal representative to "recover the reasonable cost of medical expenses, funeral expenses . . . ."). Later, John and Rachelle suggested that they brought the claim on Travco's behalf, as the "person" who "assumed liability for such expenses." *See* Wis. Stat. § 895.04(5); *see also Estate of Cavanaugh v. Andrade,* 191 Wis. 2d 244, 250, 528 N.W.2d 492 (Ct. App. 1995) (wrongful death plaintiff who has not paid for medical and funeral expenses may bring a claim for those expenses, but the claim is brought on behalf of the person who actually paid the expenses).

Travco, on the other hand, at first conceded that John and Rachelle actually brought the claim on their own behalf, even though they had not paid the underlying expenses. After being pressed by this court, however, Travco withdrew from that

¶ 25. The right to sue under the wrongful death statute, however, is distinguished from the ownership of the recovery. *Weiss,* 118 Wis. 2d at 230; *see also Chang,* 182 Wis. 2d at 561. In *Chang,* this court noted that "[r]ecovery under the wrongful death statute is keyed to actual loss." *Id.* at 560. Thus, notwithstanding the wrongful death beneficiaries' vested right to claim and recover damages listed in the statute, and to "waive and satisfy" the estate's claim for property damage as part of their settlement, the actual ownership of that recovery requires the existence of damages, which in turn requires proof of loss. *Id.* at 561. In other words, wrongful death plaintiffs are not entitled to a windfall simply because the statute has provided them with a claim or ability to recover damages they have not incurred.

¶ 26. John and Rachelle agree that they did not pay for the medical, funeral, and property damage expenses, so they have no ownership rights to any proceeds on those claims.[13] But concluding that John and Rachelle have no ownership interest in any recovery for these claims does not answer whether Travco can invade John and Rachelle's lump-sum settlement to recoup the payments it made. Travco has a subrogated interest in those claims. As such, if Travco is entitled to recovery from the settlement, that recovery must stem

position and argued, as the court of appeals concluded, that the claim was brought on its behalf.

For purposes of this decision, it does not matter on whose behalf the claim was made. The pertinent inquiry is whether Travco can assert its subrogation interest against a lump-sum settlement when it concedes that John and Rachelle have not been made whole.

[13] As noted above, John and Rachelle did not establish that they had an inheritance interest in Dayle's vehicle.

from subrogation. We now turn attention to that concept.[14]

---

[14] There are three types of subrogation: (1) legal (also known as equitable); (2) conventional (also known as contractual); and (3) statutory. *See Ruckel v. Gassner,* 2002 WI 67, ¶ 18, 253 Wis. 2d 280, 646 N.W.2d 11; 1 *The Law of Damages in Wisconsin* §§ 32.6–32.9 (Russell M. Ware ed., 3d ed. 2000). Because John and Rachelle were not Travco's insureds, there is no right to subrogation implicated by contract. And the wrongful death statute does not provide for subrogation. Thus, if Travco is entitled to subrogation, it must be through equity.

Because there is no statutory right to subrogation here, we note that the court of appeals in this case erred by relying on *Estate of Cavanaugh v. Andrade,* 191 Wis. 2d 244, 528 N.W.2d 492 (Ct. App. 1995), for determining whether Travco was entitled to share the settlement proceeds.

In *Cavanaugh,* the court of appeals concluded that a wrongful death plaintiff who brought a claim for medical expenses paid by Milwaukee County was prohibited from retaining any proceeds for that claim because the County had a subrogated interest in those expenses. *Id.* at 267. The County's subrogated interest for medical expenses stemmed from Wis. Stat. § 49.65 (1995–1996), now Wis. Stat. § 49.89. *Cavanaugh,* 191 Wis. 2d at 266. However, the court of appeals previously interpreted that statute to abrogate the common law subrogation made whole doctrine. *See Waukesha County v. Johnson,* 107 Wis. 2d 155, 320 N.W.2d 1 (Ct. App. 1982).

In *Waukesha County,* the court of appeals observed that "[u]nder common law subrogation, the subrogor must be made whole before the subrogee may recover from a third-party tort-feasor." *Id.* at 160. The court nevertheless concluded "that sec. 49.65, Stats., on its face, renders the common law subrogation principles inapplicable to counties seeking reimbursement pursuant to that section." *Id.* at 161–62; *See also Ruckel,* 253 Wis. 2d 280, ¶ 42 n.7. ("In some instances, legislatively-sanctioned subrogation may override the made whole principles discussed in this case.").

Because Travco has no statutory ground for asserting subrogation, *Cavanaugh* is not binding here.

## C

¶ 27. It has long been recognized that subrogation rests upon principles of equity.[15] Equity generally

[15] *See, e.g., Paulson v. Allstate Ins. Co.,* 2003 WI 99, ¶ 29, 263 Wis. 2d 520, 665 N.W.2d 744 ("Wisconsin case law has clearly provided that application of subrogation is controlled by equitable principles."); *Ruckel,* 253 Wis. 2d 280, ¶ 26 ("[S]ubrogation is recognized or denied upon equitable principles without differentiation between 'legal subrogation' which arises by application of principles of equity and 'conventional subrogation' arising from contract or the acts of the parties.")(citation omitted); *Ives v. Coopertools,* 208 Wis. 2d 55, 71, 559 N.W.2d 571 (1997) (Geske, J., concurring) ("Application of the subrogation principle depended upon the equities, and thus upon the facts at hand."); *Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan,* 200 Wis. 2d 599, 620, 547 N.W.2d 578 (1996) (Subrogation " 'is proper in all cases to allow it where injustice would follow its denial.' ") (citations omitted); *Schulte v. Frazin,* 176 Wis. 2d 622, 628, 500 N.W.2d 305 (1993) ("The doctrine of subrogation is based upon equitable principles."); *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 270–71, 316 N.W.2d 348 (1982) ("[T]he effect of 'conventional subrogation' was the same as 'legal subrogation,' which arises by application of the principles of equity, and that, accordingly, the contractual terms of subrogation agreements in an insurance policy were to be applied according to the rules of equity."); *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977); *American Ins. Co. v. Milwaukee,* 51 Wis. 2d 346, 352, 187 N.W.2d 142 (1971) ("Subrogation is recognized or denied upon equitable principles."); *D'Angelo v. Cornell Paperboard Products Co.,* 19 Wis. 2d 390, 401, 120 N.W.2d 70 (1963).

The only exception to this rule is legislatively-sanctioned subrogation that overrides subrogation's equitable foundation. As noted in *Ruckel:*

> In some instances, legislatively-sanctioned subrogation may override the made whole principles discussed in this case. Some

grants that "one (other than a volunteer) who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he [or she] has paid, and be subject to the defenses of the wrongdoer." *Ruckel,* 253 Wis. 2d 280, ¶ 14. However, the purpose of subrogation is to prevent an injured party from being unjustly enriched by obtaining double payment. *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977). Thus, subrogation ordinarily does not arise until the underlying debt or loss has been fully paid. *Ruckel,* 253 Wis. 2d 280, ¶ 16; *Rimes,* 106 Wis. 2d at 271; *Garrity,* 77 Wis. 2d at 541. This "antisubrogation rule" is commonly known as the *Rimes* made-whole doctrine. *See Ruckel,* 253 Wis. 2d 280, ¶ 16.

¶ 28. In *Rimes,* this court held that "one who claims subrogation rights, whether under the aegis of either legal or conventional subrogation, is barred from any recovery unless the insured is made whole." *Rimes,* 106 Wis. 2d at 272. The *Rimes* court reaffirmed the principle that a cause of action against a tortfeasor is indivisible. *Id.* at 275. "Accordingly, it is only when there has been full compensation for all the damage elements of the entire cause of action that the insured

---

examples include: (1) self-funded employee pension and benefit plans under The Federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (*see FMC Corp. v. Holliday,* 498 U.S. 52, 58–65 (1990); *Petro v. D.W.G. Corp.,* 148 Wis. 2d 725, 727–28, 436 N.W.2d 875 (Ct. App. 1989)); (2) government subrogation rights for certain public assistance payments under Wis. Stat. § 49.89 (formerly Wis. Stat. § 49.65) (*see Waukesha County v. Johnson,* 107 Wis. 2d 155, 320 N.W.2d 1 (Ct. App. 1982)); and (3) subrogation rights in worker's compensation cases under Wis. Stat. § 102.29(1) (*see Martinez v. Ashland Oil,* 132 Wis. 2d 11, 390 N.W.2d 72 (Ct. App. 1986)).

*Ruckel,* 253 Wis. 2d 280, ¶ 42 n.7.

is made whole." *Id.* That is, the made-whole doctrine established a rule of priority, such that "only where an injured party has received an award by judgment or otherwise which pays all of his elements of damages, including those for which he has already been indemnified by an insurer, is there any occasion for subrogation." *Id.*

¶ 29. This court amplified *Rimes* in *Schulte.* In *Schulte,* this court recognized that "settling plaintiffs and subrogated insurers usually compete in a practical sense for limited settlement funds." *Schulte,* 176 Wis. 2d at 633. The reality of settlements, this court stated, was an equitable factor that could not be ignored. *Id.* Coupled with a policy recognition that "the injured party should have the right to settle on its own terms," *id.* at 634, this court outlined the settlement procedure plaintiffs were to utilize to determine how a settlement impacted an insurer's subrogation rights. *Id.* at 637. That procedure requires the plaintiff to (1) settle with the tortfeasor without resolving the subrogated insurer's claim; (2) request a *Rimes* hearing to determine if the settlement made the insured whole; and (3) provide the insurer an opportunity to participate in that hearing. *Id.* If the circuit court determines that the settlement did not make the settling plaintiff whole, then the insurer's subrogation rights are extinguished. *Id.*

¶ 30. Even though *Rimes* and *Schulte* used terminology including "settling plaintiff"[16] and "injured party,"[17] we acknowledge that those terms were used

---

[16] *See Schulte,* 176 Wis. 2d at 633 ("Given the realities of settlements, settling plaintiffs and subrogated insurers usually compete in a practical sense for limited settlement funds.").

[17] *See Schulte,* 176 Wis. 2d at 634 ("More importantly, we believe the injured party should have the right to settle on its

272

interchangeably with "insured."[18] Nonetheless, John and Rachelle contend equity requires extending these principles to wrongful death plaintiffs, while Travco clings to the insurer/insured relationship as vital to the application of the made-whole doctrine. We agree with John and Rachelle for the following reasons.

¶ 31. First, the *Rimes* doctrine is essentially one of priority, as it determines who gets paid first among competing claims. In this case, wrongful death plaintiffs' claims must take priority. If the made-whole doctrine was inapplicable to wrongful death plaintiffs, the wrongful death statute's purpose of compensating wrongful death beneficiaries for the loss of relational interest between the beneficiaries and the deceased would be impinged. *See Chang,* 182 Wis. 2d at 560. We have already established that John and Rachelle were statutorily entitled to manage a claim for property damage, as well as make claims for medical and funeral expenses as part of their wrongful death cause of action. *Rimes* confirmed that a cause of action against the tortfeasor is indivisible. *Rimes,* 106 Wis. 2d at 275. Thus, these claims are inseparable from John and Rachelle's claims for their own losses of pecuniary injury and loss of society and companionship.

---

own terms."); *Rimes,* 106 Wis. 2d at 275 ("[O]nly where an injured party has received an award by judgment or otherwise which pays all of his elements of damages, including those for which he has already been indemnified by an insurer, is there any occasion for subrogation."

[18] *See Schulte,* 176 Wis. 2d at 635 ("Given the differing incentives and motives of the insured, the subrogated insurer, and the tortfeasor and his insurer, it may be that only the injured party and the tortfeasor can reach an agreement to settle.").

¶ 32. Here, John and Rachelle disposed of these claims by fully settling and releasing the defendants (other than Travco), but they did so with a lump-sum settlement. Ordinarily, we have no way of knowing what damages the lump-sum, non-apportioned, settlement covers. That is why *Rimes* requires a hearing to prove up damages so that the settlement's reach in relation to actual damages can be determined. In this case, however, we do know that the entirety of the settlement insufficiently compensated John and Rachelle for their losses because Travco stipulated that the settlement did not make them whole. It would be contrary to the wrongful death statute's purpose to subject John and Rachelle to further loss by forcing them to pay out funds to another from a settlement that by itself is inadequate.[19] Thus, their claim must take priority.

¶ 33. Second, we see no conceptual difference between a personal injury case involving a subrogated insurer, as in *Rimes,* and a wrongful death case involving a subrogated insurer. In a personal injury case where the plaintiff is insured, the plaintiff's insurer will ordinarily pay for any medical expenses and property damage. Travco did that here. In the personal injury plaintiff's suit against the tortfeasor, the plaintiff will claim as damages the medical expenses and property damage even though the plaintiff did not actually pay for those expenses. John and Rachelle did that here. In the personal injury plaintiff's settlement with the tort-

---

[19] *See also Wurtzinger,* 33 Wis. 2d at 709. In *Wurtzinger,* this court held that the equitable doctrine of contribution could not be used against the beneficiaries of a wrongful death action. *Id.* This court stated, "The wrongful-death action does not belong to the deceased and the proceeds of the action should not be subject to his obligations." *Id.* at 710.

feasor, there will usually be a full settlement and release. That was done here. And in the plaintiff's personal injury case, this court has said that the subrogated insurer cannot invade the plaintiff's settlement unless the plaintiff has received an award which pays "all of his [or her] elements of damages, including those for which he has already been indemnified by an insurer." *Rimes,* 106 Wis. 2d at 275. We see no reason why this conceptual framework does not apply to wrongful death plaintiffs.

¶ 34. Third, because "[e]quity does not lend itself to the application of black letter rules," subrogation "depends upon a just resolution of a dispute under a particular set of facts." *Vogt v. Schroeder,* 129 Wis. 2d 3, 12, 383 N.W.2d 876 (1986). The equitable considerations balanced by the made-whole doctrine are "an insurer's right to recoup benefits paid and an injured person's right to obtain full compensation." *Schulte,* 176 Wis. 2d at 630. Here, the two considerations being balanced are the wrongful death plaintiffs' right of full recovery and to manage their wrongful death action according to the wrongful death statute against an insurer's right to recoup benefits paid. What has traditionally tipped the balance in favor of an injured person's right to be made whole as the just resolution is that the insurer has been paid to accept the risk that it may go unpaid. *Garrity,* 77 Wis. 2d 542. We see no reason, and neither has Travco provided us with one, why John and Rachelle's lack of status as "insureds" shifts the equitable balance in Travco's favor. Although John and Rachelle have not paid Travco the premiums, Travco was nonetheless paid a premium to accept the risk that it would go unpaid. We therefore conclude that

the equitable balance still tips in the injured person's favor, in this case the wrongful death plaintiff's right, to obtain full recovery.

¶ 35. Fourth, the *Schulte* court recognized that "settling plaintiffs and subrogated insurers usually compete in a practical sense for limited settlement funds." *Schulte,* 176 Wis. 2d at 633. That competition is just as real here. And as in *Schulte,* this competition is an equitable factor we cannot ignore. *See Id.*

¶ 36. Fifth, if *Rimes* did not apply, this state's policy of encouraging settlement would suffer in wrongful death actions. *See Schulte,* 176 Wis. 2d at 634 ("Wisconsin has a 'long-standing policy in favor of settlements.' ") (citations omitted). Just as in personal injury contexts, a tortfeasor in a wrongful death action "may quite reasonably not be willing to offer the maximum amount possible to settle unless he receives a complete release." *Id.* We have already precluded a subrogated insurer's ability to frustrate an insured's attempts to settle disputes out of court on the insured's terms. *Id.* at 634–35. Travco has not provided us with any persuasive reason as to why wrongful death plaintiffs should be treated differently.

■■■

¶ 37. For these reasons, we conclude that the *Rimes* made-whole doctrine and the *Schulte* settlement procedure apply to wrongful death plaintiffs. Here, it is undisputed that John and Rachelle properly followed the *Schulte* procedure to determine the status of Travco's subrogation rights. Because Travco stipulated that the $280,000 settlement did not make John and Rachelle whole, its subrogation rights are consequently extinguished.

¶ 38. Before closing, we comment on Travco's, and the court of appeals', concern that our conclusion

today will do harm in multiple plaintiff litigation. Our conclusion today addresses only the extension of *Rimes* to wrongful death actions that involve a subrogated insurer. To whatever extent that our reasoning can be construed as applying to multiple plaintiff litigation, we come full circle from where this part of the discussion began: subrogation and its antisubrogation counterpart are fundamentally equitable concepts. Thus, equity is the bulwark against the horribles that Travco and the court of appeals fear. Outside of situations where a person has a competing claim with a subrogated insurer, the equities will vary dramatically.

## IV

¶ 39. In conclusion, equity requires that *Rimes* and its progeny apply to wrongful death plaintiffs. Wrongful death plaintiffs are entitled to be made whole for their losses, but not more than whole. To the extent that wrongful death plaintiffs receive a portion of damages for expenses they have not incurred after having been made whole for their losses, they have been unjustly enriched. However, because of Travco's stipulation that John and Rachelle's lump-sum settlement did not make them whole, those circumstances are absent here. Therefore, Travco's subrogation rights are extinguished.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 40. JON P. WILCOX, J. (*concurring*). I write separately to restate some basic rules of subrogation in order to address the court of appeals' concern over the application of the made-whole doctrine in this case. Further, I wish to state that in my view, the only reason

277

the plaintiffs in this wrongful death action are allowed to defeat Travco's right of subrogation is because Travco stipulated that the plaintiffs were not made whole and Wis. Stat. § 895.04 (2001–02)[1] allows the plaintiffs to assert and satisfy certain claims in which Travco has a subrogated interest that properly belong to the estate and could have been recovered as part of a survival action.

¶ 41. Subrogation occurs when a subrogee "steps into the shoes of the subrogor *to the extent it has made payment* as a result of [an] actionable event." *Wilmont v. Racine County,* 136 Wis. 2d 57, 63, 400 N.W.2d 917 (1987)(emphasis added). Thus, "[p]ayment is the *sine qua non* for subrogation." *Muchow v. Goding,* 198 Wis. 2d 609, 626, 544 N.W.2d 218 (Ct. App. 1995). Without payment by one party on behalf of another, no subrogation relationship exists between the two and no subrogation rights arise. *Id.*[2] If a subrogation relationship exits, the subrogee does not possess an independent claim against the tortfeasor (whose injury of the subrogor necessitated payment); rather, it owns part of the liability of the tortfeasor separate from that part owned by the subrogor. *Wilmont,* 136 Wis. 2d at 63–64.

¶ 42. As the subrogee and subrogor each own part of the claim against a tortfeasor, they often are forced to compete for a limited pool of money. When this occurs, the made-whole doctrine establishes an equitable rule of priority that prevents the subrogee from asserting its

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] *See also Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 271 316 N.W.2d 348 (1982) (" 'The primary reason for the adoption of subrogation is the principle of indemnity.' ") (quoting Denenberg, *Subrogation Recovery: Who is Made Whole,* FIC Quarterly, Winter 1979 at 185–86).

right of subrogation until its subrogor has been made whole for all damages suffered. *Paulson v. Allstate Ins. Co.*, 2003 WI 99, ¶¶ 21–26, 263 Wis. 2d 520, 649 N.W.2d 645. Thus, "the subrogee has no right to share in the fund recovered from the tort-feasor until the subrogor is made whole." *Garrity v. Rural Mut. Auto. Ins. Co.*, 77 Wis. 2d 537, 547, 253 N.W.2d 512 (1977). Where there is a settlement between the tortfeasor and the subrogor, the subrogor may request a hearing in which the circuit court determines whether the subrogor has been made whole by the settlement amount. *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 278–79, 316 N.W.2d 348 (1982).

¶ 43. In order to foster settlements, allow injured parties to settle on their own terms, and ensure that subrogees participate in a *Rimes* hearing, this court approved the use of a settlement agreement whereby the tortfeasor settles with the plaintiff and the plaintiff grants the tortfeasor a full release and further agrees to indemnify the tortfeasor for any claim made by its subrogee. *Schulte v. Frazin*, 176 Wis. 2d 622, 633–35, 500 N.W.2d 305 (1993). Such an agreement calls for application of the made-whole doctrine because it "indirectly creates the prospect that the insurer will be competing with its own insured." *Id.* at 633–34.

¶ 44. I wish to emphasize that the *Schulte* settlement procedure is a means of ensuring application of the made-whole doctrine, which itself limits pre-existing subrogation rights. Neither *Schulte* nor the made-whole doctrine as set forth in *Garrity* and *Rimes* create subrogation rights in the first instance. As such, their application is dependent upon the existence of a subrogation relationship between two parties, which, in turn, is dependent upon one party indemnifying the other for a loss. That is, the made-whole doctrine

applies only where a subrogee and subrogor compete for a limited pool of money. *Paulson,* 263 Wis. 2d 520, ¶¶ 23–28.

¶ 45. I reiterate these basic tenets of the law of subrogation in response to the court of appeals' concern that operation of the made-whole rule in this case could result in a single plaintiff being able to extinguish the rights of other plaintiffs or insurers in a multi-plaintiff action against a common tortfeasor. *See* majority op., ¶ 10. Such a result should never occur under a proper application of established subrogation principles.

¶ 46. Assume plaintiff A settles with a tortfeasor and further agrees to indemnify that tortfeasor against claims brought by plaintiffs B and C or their insurers. Unless plaintiffs B or C or their insurers have paid part of the loss suffered by plaintiff A, there is no subrogation relationship between the parties. That is, unless some other party has indemnified plaintiff A, there is no relation of subrogee and subrogor and no subrogation rights exist. If there is no subrogation relationship in the first instance, then the made-whole doctrine has no relevance. In the absence of inter-plaintiff indemnification, each plaintiff possesses a separate independent claim against the tortfeasor. In contrast, the made-whole doctrine applies where two parties each own part of a single claim by virtue of a subrogation relationship and are forced to compete for limited funds. *See Paulson,* 263 Wis. 2d 520, ¶¶ 23–28. While a *Schulte* settlement forces a subrogee and subrogor to compete for limited funds, it does not create the subrogation relationship between the two.

¶ 47. Thus, the fact that multiple plaintiffs may compete for limited funds when pursuing a common tortfeasor does not trigger application of the made-whole doctrine unless they each own part of the other's

claims. Where multiple plaintiffs each possess independent claims against a common tortfeasor and there is no subrogation relationship between them in the first instance, a *Schulte* settlement does not create subrogation rights and the made-whole doctrine has no application.

¶ 48. However, the result of the majority opinion is perfectly consistent with these basic subrogation principles. Here, Travco paid sums of money under its insurance policy for Dayle's funeral expenses, medical expenses, and damage to her wrecked car. Majority op., ¶ 3. As these items of damages were incurred between the time of the tortious act and Dayle's death, they properly belong to the estate and could be asserted as part of a survival action under Wis. Stat. § 895.01(1). *Weiss v. Regent Props. Ltd.*, 118 Wis. 2d 225, 233, 346 N.W.2d 766 (1984).[3]

¶ 49. As such, there is no doubt that Travco obtained a subrogation right in claims belonging to the estate to the extent it made payment to or on behalf of the estate. However, the estate did not bring a survival action in this case; rather, the plaintiffs brought an action for wrongful death, claiming the above damages as well as losses stemming from the deprivation of society and companionship of their mother under § 895.04. Had the estate instead brought a cause of action, Travco's subrogation rights would certainly be contingent upon the estate being made whole for its damages.

¶ 50. While a "wrongful death action is separate and distinct from the survival action[,]" *id.*, Wis. Stat.

[3] *See also* J. Ric Gass et al., 2 *The Law of Damages in Wisconsin: Wrongful Death* § 16.7, at 12 (Russell M. Ware ed., 3d ed. 2003) ("Medical, hospital, and funeral expenses are properly items of damages for the estate.").

§ 895.04(5) allows those bringing a claim for wrongful death to recover medical and funeral expenses. Further, Wis. Stat. § 895.04(6) allows a wrongful death plaintiff to "waive and satisfy the estate's cause of action" as part of a settlement agreement. Thus, § 895.04 allows the plaintiffs to essentially stand as proxies for the decedent's estate by allowing them to assert and control claims that properly belong to the estate.

¶ 51. As noted, a subrogated interest is not an independent claim, but instead represents part owner-ship of the subrogor's claim against the tortfeasor. Because of its payments to or on behalf of the estate, Travco owns part of the claims that the plaintiffs are able to assert and control by virtue of § 895.04. In essence, as a result of § 895.04, Travco has the same relationship with the plaintiffs (to the extent they are able to assert and satisfy claims belonging to the estate) as it would with the decedent's estate, had the estate sought recovery.

¶ 52. Thus, Travco's subrogated interest in claims belonging to the estate is rightly subject to the plaintiffs being made whole, vis-à-vis the claims they assert on behalf of the estate, the same as it would be had the estate itself asserted these claims. As Travco stipulated that the plaintiffs were not made whole, the made-whole doctrine appropriately limits its subrogation rights. Likewise, because the plaintiffs are able to assert and satisfy claims that properly belong to the estate, use of the *Schulte* settlement procedure is just as appropriate here as it would be had the estate brought a cause of action and executed the same type of agreement.

¶ 53. I am authorized to state that Justice PATIENCE D. ROGGENSACK joins this opinion.